IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jose Luis Cruzado Wilson, | ) | C/A No.: 1:10-2206-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Mary M. Mitchell, Prison Warden; Lt. Bryant, Prison Lt.; Bureau of Prisons, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jose Luis Cruzado Wilson, proceeding pro se, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff is an inmate in the custody of the Bureau of Prisons (BOP), and files this action *in forma pauperis* under 28 U.S.C. § 1915.

Before the court is Defendants' Motion to Dismiss [Entry #17]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) and (e) (D.S.C.), the undersigned is authorized to review such complaints for relief. Because the motion to dismiss is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

Plaintiff filed his complaint in this action on August 25, 2010 [Entry #1]. Defendants' motion to dismiss was filed on January 4, 2011. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond

adequately to Defendants' motion [Entry #18, #30]. Plaintiff filed a response in opposition to Defendants' motion on March 16, 2011 [Entry #41]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion to dismiss be granted.

Plaintiff claims Defendant Bryant and other BOP employees used excessive force against him, causing him to sustain injuries. *See Compl.* [Entry #1]. He contends Defendants have since denied him the proper medical care and that these actions have exacerbated his pre-existing medical condition, causing him more injury. *Id.*

II.     Standard of Review

Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b). This court is required to liberally construe pro se complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). When a federal court is evaluating a pro se complaint, the plaintiff's factual allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a petition to "conjure up questions never

squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Moreover, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). Although the court must liberally construe a pro se complaint, the United States Supreme Court has recently made clear that, under Fed. R. Civ. P. 8, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

Expounding on its decision in *Twombly*, the United States Supreme Court stated in *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state

a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 556, 557, 570) (citations omitted); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003).

III.   Analysis

   A.   Applicable Law

Plaintiff is bringing suit against the warden of a federal prison. As such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

   B.   Exhaustion of Administrative Remedies

Defendants have moved to dismiss the complaint based in part on the defense of Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform

Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The Bureau of Prisons has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written

5

complaint to the warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. §542.15(a).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 94–95. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could

> proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

Plaintiff claims he submitted two administrative remedies, a BP-8 and BP-9, at the prison level while at FCI-Edgefield, which he claims were never answered by Defendant Mitchell. Compl. at 4 [Entry #1]. He also alleges he later sent administrative remedies to the Regional and the Central Office, which he alleges were both rejected because they were not sensitive. *Id.* He asserts that BOP employees at every level are trying to prevent him from exhausting his administrative remedies in an effort to "cover up the assault." *Id.* at 5. Records reveal that Mr. Wilson started the administrative remedy process by filling out a BP-8 alleging Defendant Bryant allowed staff to assault him. [Entry #17-2 at 7]. According to Defendants, because the BP-8 set forth allegations about a serious assault of an inmate by staff, the BP-8 was forwarded to the Special Investigative Services (SIS) Lieutenant for investigation. Cassaro Aff. [Entry #17-2]. Subsequently, Mr. Wilson's allegations set forth in the BP-8 were forwarded to the Office of Internal Affairs (OIA). *Id*. Defendants admit that a written response was not provided to Plaintiff and his BP-8 was not returned to him. *Id.* However, according to Defendants and undisputed by Plaintiff, he was informed verbally that the allegations set forth in his BP-8 were being investigated. *Id*.

BOP policy requires the deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request is 20 days following the date on which the basis for the Request occurred. Program Statement 1330.16 [Entry #17-3]. A review of SENTRY, the BOP's grievance record system, indicates Plaintiff did not attempt to file a BP-9. [Entry #17-2 at 6]. Although Plaintiff contends he filed a BP-9, he presents no documentation for this contention. See Resp. Brief [Entry #37]. Defendants assert that if Plaintiff had filed a BP-9, the Administrative Remedy Clerk, not Defendant Mitchell, would have logged the remedy into SENTRY, so there would have been a record of Plaintiff's attempt to file the BP-9. *Id.* Therefore, from the record presented, it appears Plaintiff filed a BP-10 (rather than a BP-9) to the Region claiming it was sensitive. [Entry #1]. Because BOP policy dictates that allegations of staff misconduct, even allegations of a serious assault by staff, are not considered sensitive, Plaintiff's BP-10 was rejected. [Entry #17-2 at 11]. Because Plaintiff has not set forth any evidence demonstrating that he has properly exhausted his administrative remedies by filing the required BP-9, these claims are therefore not ripe for judicial review and should be dismissed for failure to exhaust administrative remedies.

III.    Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss [Entry #17] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

April 18, 2011                                      Shiva V. Hodges
Florence, South Carolina                  United States Magistrate Judge


**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**