IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jose Luis Cruzado Wilson, | ) | C/A No.: 1:10-2206-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Mary M. Mitchell, Prison Warden; Lt. Bryant, Prison Lt.; Bureau of Prisons, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jose Luis Cruzado Wilson, proceeding *pro se* and *in forma pauperis*, brings this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff is an inmate in the custody of the Bureau of Prisons (BOP) and alleges violations of his constitutional rights by employees of the BOP. Before the court is Defendants' Motion to Dismiss [Entry #17]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) and (e) (D.S.C.), the undersigned is authorized to review such complaints for relief. Because the motion to dismiss is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff claims Defendant Bryant and other BOP employees used excessive force against him, causing him to sustain injuries. *See* Compl. [Entry #1]. He contends Defendants have since denied him the proper medical care and that these actions have exacerbated his pre-existing medical condition, causing him more injury. *Id.*

By prior Report and Recommendation dated April 18, 2011, the undersigned recommended Defendants' motion to dismiss be granted for Plaintiff's failure to exhaust his administrative remedies. [Entry #43]. On May 18, 2011, the Honorable R. Bryan Harwell declined to adopt the Report and Recommendation and recommitted the matter to the undersigned, with instructions that the parties submit all documents in their possession related to Plaintiff's attempts to exhaust his administrative remedies. [Entry #49]. Having carefully considered the parties' responsive submissions [Entry #53, #59] and the record in this case, the undersigned is constrained to again recommend Defendants' motion to dismiss be granted.

II.     Standard of Review

Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b). This court is required to liberally construe pro se complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). When a federal court is evaluating a pro se complaint, the plaintiff's factual allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so;

however, a district court may not rewrite a petition to "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Moreover, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). Although the court must liberally construe a pro se complaint, the United States Supreme Court has recently made clear that, under Fed. R. Civ. P. 8, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

Expounding on its decision in *Twombly*, the United States Supreme Court stated in *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]"

> devoid of "further factual enhancement." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 556, 557, 570) (citations omitted); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003).

III.  Analysis

    A.  Applicable Law

Plaintiff brings this action against employees of a federal prison, therefore his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

    B.  Exhaustion of Administrative Remedies

Defendants have moved to dismiss the complaint based in part on the defense of Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their

administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The Bureau of Prisons has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level (BP-8). 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden (BP-9). 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate

may appeal to the Regional Director (BP-10). 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel (BP-11). *Id*. Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 94–95. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the

grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

The parties agree that Plaintiff first attempted informal resolution by filing a BP-8.[1] In his complaint, Plaintiff claims he also submitted a BP-9, which he alleges was never answered by Defendant Mitchell. Compl. at 4 [Entry #1]. Defendants dispute that Plaintiff submitted a BP-9, as discussed further below. The parties agree, however, that Plaintiff filed a "BP-10 Sensitive,"[2] which was rejected. *See* Resp. to Mot. to Dismiss [Entry #41]. Specifically, the rejection notice states: "The issue you raised is not

---

[1] In his complaint, Plaintiff claimed the BP-8 was never answered and that it was destroyed. Compl. [Entry #1 at 2–4]. However, in his response to the motion to dismiss, Plaintiff alleges: "I file[d] a BP-8 and soon after I receive[d] the BP-8[,] I filed a BP-9 with both forms attach[ed] together (BP-8 BP-9)." [Entry #41]. Defendants concede Plaintiff filed a BP-8. [Entry #17-2].

[2] BOP policy allows an inmate to bypass filing a BP-9 if an issue is sensitive. Specifically, the policy states:

> If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

*See* PS 1330.16, § 542.14(d) [Entry #17-3 at 7].

7

sensitive. However, we retained your request/appeal according to policy. You should file a request or appeal at the appropriate level via regular procedures." [Entry #59-2 at 7]. Plaintiff next filed a BP-11, which appears to have also been marked "sensitive,"[3] and which was rejected with the same response as the BP-10. [Entry #59-3 at 6].

### 1. Exhaustion with regard to filing a BP-9

The parties primarily dispute whether Plaintiff filed a BP-9. In his complaint, Plaintiff claims that he filed a BP-9 that was never answered. Compl. [Entry #1 at 3]. Plaintiff further alleges that BOP employees destroyed his BP-9, although he provides no basis for this allegation. *Id*. at 4. Not until his objection to the prior Report in this case, which recommended dismissal of Plaintiff's action for failure to set forth evidence of exhaustion, did Plaintiff suggest that he once had a copy of the BP-9. In his objection, Plaintiff alleged for the first time that when he was transferred from FCI-Edgefield, the staff refused to "log in" his legal documents, including the BP-9 at issue. [Entry #45].

In their motion to dismiss, Defendants submitted records that reveal a review of SENTRY, the BOP's grievance record system, indicates Plaintiff did not attempt to file a BP-9. [Entry #17-2 at 6]. Although Plaintiff claims Defendant Mitchell destroyed the BP-9, Defendants assert that if Plaintiff had filed a BP-9, the Administrative Remedy Clerk, not Defendant Mitchell, would have logged the remedy into SENTRY, so there would have been a record of Plaintiff's attempt to file. *Id.*

---

[3] Defendants allege that the BP-11 was marked sensitive, and Plaintiff does not dispute this claim.

The undersigned submits that Defendants have met their burden of demonstrating Plaintiff failed to properly file a BP-9. Plaintiff's naked assertion that Defendants destroyed his BP-9, without further factual enhancement, is insufficient to overcome Defendants' evidence. If Plaintiff is allowed to proceed to federal court by claiming, without any evidence, that BOP officials destroyed his BP-9, the practical effect is an erosion of the requirement of exhaustion, as the *Woodford* court warned. Defendants bear the burden of proof when asserting an affirmative defense of failure to exhaust administrative remedies. Defendants will never be able to definitely prove a negative—that the proper grievance was not filed—in the face of a bald assertion that BOP officials destroyed the grievance. However, Defendants have met their burden of proof in having demonstrated the absence of an entry in records kept in accordance with the BOP's regularly-conducted activities. *See* F.R.E. 803(7) (evidence admissible that a matter is not included in one's business records to prove the nonoccurrence or nonexistence of the matter). Additionally, although Plaintiff claims in his objections to the prior Report that he cannot produce a copy of the BP-9 because BOP officials would not "log in" his legal papers when he was transferred from FCI-Edgefield, Plaintiff provides no explanation as to why he did not present this allegation earlier in this litigation, such as in his discussion of exhaustion in his complaint or in his response to Defendants' motion to dismiss. Therefore, from the record presented,[4] the undersigned is

---

[4] The undersigned cannot ignore that Plaintiff's allegations regarding exhaustion are ambiguous, vague, and factually inconsistent. For example, Plaintiff has claimed both that the BP-8 he submitted was unanswered and destroyed and that the BP-8 was returned

9

constrained to recommend dismissal for Plaintiff's failure to exhaust his administrative remedies by filing a BP-9.

### 2. Exhaustion with regard to filing a BP-10 and BP-11

Assuming *arguendo* that Plaintiff filed a BP-9, he still cannot show that he properly exhausted his administrative remedies. By Plaintiff's own admission, he submitted a BP-10 marked sensitive to the regional office. The regional office rejected and returned Plaintiff's BP-10, noting that the issue raised was not sensitive, and that he "should file a request or appeal at the appropriate level via regular procedures." [Entry #59-2]. Plaintiff was on notice when he received the BP-10 rejection notice that he had not properly exhausted. Instead of filing a BP-9 or filing a standard (*i.e.*, non-sensitive) BP-10, Plaintiff chose to submit a BP-11, again marked sensitive, to the central office. Even if Plaintiff had filed a BP-9 that Defendants destroyed, he still failed to properly exhaust his administrative remedies to the regional and central offices, and the undersigned therefore recommends Defendants' motion to dismiss be granted for failure to exhaust.

### C. Subject Matter Jurisdiction

Defendants argue this case should be dismissed for lack of subject matter jurisdiction in light of sovereign immunity. The United States cannot be sued without its

---

to him and attached to the BP-9 he alleges was destroyed. Additionally, Plaintiff alleges both that the BP-9 was destroyed and that the FCI-Edgefield Staff refused to "log in" the BP-9 when he was transferred from the institution. Finally, Plaintiff claims he filed a BP-9, but also filed a BP-10 Sensitive, which is used to bypass filing a BP-9.

consent, and consent is a prerequisite to a suit against the United States. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The United States has not consented to suit under the *Bivens* doctrine. A *Bivens* action may not be brought against agencies or departments of the United States. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend *Bivens* remedy to federal agencies). The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Therefore, claims for monetary damages against Defendants in their official capacity are barred by the doctrine of sovereign immunity. *See Hagemeier v. Block*, 806 F.2d 197, 202 (8th Cir. 1986), *cert. denied*, 481 U.S. 1054 (1987); *see also Morrison v. Pettiford*, C/A No. 4:07-1504-CMC-TER, 2007 WL 4729692, *1 (D.S.C. Dec. 18, 2007). However, in the instant case, Plaintiff has also requested injunctive relief against Defendants. Therefore, the undersigned recommends the district judge deny Defendants' motion to dismiss to the extent it claims the court lacks subject matter jurisdiction over Defendants for non-monetary relief.

    D.    Failure to State a Claim Against Defendant Mitchell

Defendants next argue that Plaintiff has failed to state a claim pursuant to Fed. R. Civ. P. 8 and 12(b)(6) against Defendant Mitchell. At this stage of the case, viewing the pleadings in the light most favorable to Plaintiff and considering the liberal pleading standard, the undersigned submits Plaintiff has alleged sufficient facts to survive dismissal on this basis at this stage. Therefore, the undersigned recommends Defendants'

motion be denied to the extent it claims Plaintiff failed to state a claim pursuant to Fed. R. Civ. P. 8 and 12(b)(6) against Defendant Mitchell.

    E.    Qualified Immunity

Defendants also assert they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. The undersigned submits that dismissing the claims against Defendants in their individual capacities is premature on the record in its current posture. Therefore, it is recommended Defendants' motion to dismiss be denied on the basis of qualified immunity.

    F.    Medical Claims

To the extent the medical claims in this case were recommitted to the undersigned, it is recommended these claims be dismissed without prejudice. Venue in a *Bivens* action is proper in the district where any defendant resides, where a substantial part of the events or omissions giving rise to the claim occurred, or where any defendant may be found. 28 U.S.C. §1391(b). In his complaint, Plaintiff alleges he was denied medical assistance by the medical staff at USP-Atlanta and USP-Lee. Compl. [Entry #1 at 4]. He further alleges that the Warden and S.I.S. Lt. have also continuously denied his several requests to them for medical assistance. *Id*. It does not appear that Plaintiff's medical claims implicate any

of the Defendants in the case at hand. Furthermore, it does not appear that the individuals responsible for Plaintiff's medical claims reside or may be found in the District, nor did a substantial part of the medical claims arise in South Carolina. Therefore, it appears venue is not proper in the District of South Carolina and for this reason it is recommended the medical claims be dismissed without prejudice on this basis

IV.     Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss [Entry #17] be granted in part, on the ground that Plaintiff failed to exhaust his administrative remedies and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

June 29, 2011                                               Shiva V. Hodges
Florence, South Carolina                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**